**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEONARD J. LANIER, | ) | Case No. 3:21-CV-01523-BMB |
| | ) | |
| Petitioner, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| WARDEN, CHARMAINE BRACY, | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.    INTRODUCTION

Petitioner, Leonard J. Lanier ("Mr. Lanier"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Lanier challenges his sentence of 30 months for one third-degree felony count of assault on an employee of the Ohio Department of Rehabilitation and Corrections while incarcerated in violation of R.C. §§ 2903.13(A), (C)(1), and (C)(3).

Mr. Lanier asserts four grounds for relief. Respondent, Warden Charmaine Bracy ("Warden"), filed an answer/return of writ on March 31, 2022. (ECF No. 12). This matter was referred to me on September 2, 2022 under Local Rule 72.2 to prepare a report and recommendation on Mr. Lanier' petition. (*See* ECF non-document entry dated September 2, 2022). For the reasons set forth below, I recommend that Mr. Lanier's petition be DISMISSED and/or DENIED. I further recommend that the Court not grant Mr. Lanier a certificate of appealability.

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by

1

clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C.

§ 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d

524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by

a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio

Court of Appeals for the Sixth Appellate District summarized the facts as follows:

> {¶ 4} The following evidence was presented by the prosecution through the testimony of Officers Ford and Eldridge, corrections officers at the Toledo Correctional Institution, a state institution, and Lieutenant Weirich, a supervising officer.

> {¶ 5} Officer Ford testified as follows. On April 11, 2017, appellant was an inmate at the institution and housed in the limited privilege housing, where inmates take scheduled turns for meals and recreation time and return to their cells when directed by a correction officer to "lock down." It was not uncommon (up to three-to-four times a week) that the daily head count would run over the scheduled time, preventing officers from moving inmates. Both Officers Ford and Eldridge testified no adjustment would be made in the schedule and the inmates knew they would not receive extra time for their scheduled release. Lieutenant Weirich testified that it was reasonable for an inmate to request additional time, but emphasized the matter was left to the discretion of the guards and an inmate had to comply with the officer's directions.

> {¶ 6} Both Officers Ford and Eldridge described the procedure for dealing with an inmate who would not cooperate. Officer Ford testified the officers try to use communication skills to calm an inmate down. If the inmate cannot be controlled, both officers testified they could issue a "ticket," which would result in lost privileges or placement into more restrictive housing. Officer Ford testified she did not give appellant a ticket on the day at issue because she did not expect the situation to proceed as it had.

> {¶ 7} That day, the daily headcount was delayed and appellant's group was let out of their cells seven minutes late. Neither officer recalled having a problem with appellant prior to this day. After lock down was announced, Officer Ford discovered appellant remained in a four-by-five foot corner area between a recreation cage and a mirrored one-way window used by correction officers to see the inmates.

> {¶ 8} Officer Ford told appellant he had to lock down and appellant refused to comply stating he had been let out seven minutes late. Officer Ford called for assistance. While she acknowledged appellant's complaint, she told him he had to stick to the schedule because other inmates needed to be let out. Appellant continued to refuse to comply. Seventeen seconds into the encounter, Officer Ford directed appellant to put his hands on the wall, a common command used throughout the day for the officers to complete pat downs and shakedowns.

2

{¶ 9} Officer Eldridge testified he was about 10-15 feet away from the area when he overheard Officer Ford speaking to someone. This caught his attention because the inmates were supposed to be in lock down. He went to investigate and saw Officer Ford talking to appellant. Officer Eldridge appears on the camera footage after Officer Ford began talking to appellant.

{¶ 10} Officer Ford testified that when appellant complied with her direction to place his hands on the wall, she felt safe to approach appellant to place him in handcuffs. At the time, Officer Eldridge was behind her right shoulder and was prepared to assist her. As she placed her hands on appellant's back to feel body movement if he moved, appellant turned around and swung, striking Officer Ford on the left side of her face and knocking off her glasses and injuring her face. Officer Ford believed appellant was trying to strike Officer Eldridge. Officer Eldridge confirmed he was about two-to-three feet behind Officer Ford and also believed appellant was going to be compliant before he turned around and struck Officer Ford with a closed fist. Afterward, Officer Eldridge moved in to restrain appellant.

{¶ 11} Appellant continued to resist despite directions to stop and despite the fact that Officer Ford kept spraying him in the face with pepper spray. Additional officers came to their assistance and struggled in the corner with appellant until appellant was brought to the floor. The entire incident occurred in less than two minutes. After the incident, Officer Ford testified, the officers involved wrote up an incident report in separate locations and supervisors reviewed the camera recordings.

{¶ 12} Camera footage admitted into evidence showed Officer Ford moving through the area and stopping suddenly to talk to someone in the four-by-five foot area where the incident occurred, which was outside the range of the camera. A short time later, another officer can be seen entering into the scene on Officer Ford's left. The incident itself was outside the range of the camera and both Officer Ford and Eldridge testified they were unaware the area was out of camera range.

{¶ 13} Officer Eldridge testified that while he knew inmates could make informal complaints, he did not know how the complaints were processed. He did not believe appellant had filed a complaint against him, but he conceded appellant could have filed one. While he had prior inmate complaints filed against him, he had not been disciplined as a result and did not know any other officer who had been disciplined because of such a complaint. Officer Eldridge further testified he could have but did not recall having any contact with appellant after this incident.

{¶ 14} Appellant renewed his motion to reconsider the granting of the motion *in limine* which prevented the defense from questioning Officer Eldridge further about prior disciplinary actions. Appellant argued that the witness opened the door to the questioning when he stated he had never been disciplined and had no knowledge of the inmate complaint process.

{¶ 15} In support of his motion, appellant asserted that he had evidence Officer Eldridge had two disciplinary actions taken against him as a result of inmate

complaints. The first document was a letter from the Ohio Department of Rehabilitation and Corrections indicating the officer's probation would be extended an additional six months because of a matter which did not involve inmates. The remaining records relate to an internal investigation of an incident subsequent to the one at issue which involved the officer's use of force against another inmate. This investigation was initiated as a result of a "documented Use of Force occurrence" pursuant to an administrative regulation. The institutional initially found the use of force was unjustified and referred the matter to a disciplinary hearing. However, the disciplinary review team concluded there was insufficient evidence to support discipline. Appellant did not present any evidence that either matter was instigated by an inmate complaint.

{¶ 16} Appellant argued that such evidence was significant to establish that Officer Eldridge had a motivation to lie and raise an inference that he had actually started the incident and appellant accidentally hit Officer Ford. The defense also relied upon the testimony of Officer Ford, which indicated that appellant did not become violent until Officer Eldridge became involved.

{¶ 17} The trial court ruled that it would allow the defense to question Officer Eldridge only regarding his knowledge of the process of handling inmate complaints versus internal investigations regarding employees in order to clarify Officer Eldridge's testimony. The trial court questioned the relevance of establishing that Officer Eldridge had not been truthful about prior reprimands when there was no evidence in the record that Officer Eldridge exceeded his authority or used excessive force. The trial court also considered the prejudicial effect on the ultimate issue of whether or not appellant assaulted Officer Ford by allowing evidence of Officer Eldridge's prior discipline to be presented.

{¶ 18} Appellant continued to cross-examine Officer Eldridge. When questioned whether there were two processes for investigations, the officer testified that he would not know. He knew there is an inmate complaint process, but he did not know what happens once a complaint is made. He denied knowing the process by which an officer could be reprimanded for violating an institution rule. He surmised that an incident report could be filed by the officer who witnessed the violation of a rule. But, he reiterated he does not participate in the process.

{¶ 19} Finally, Lieutenant Weirich confirmed that if force was used to physically take an inmate to their cell, a supervisor would prepare a use of force report after watching any video and reading the officer reports. Furthermore, an inmate could make a complaint either verbally by addressing an issue directly with an officer or by filling out a form. A written inmate complaint is sent to the institutional inspector who will respond to the complaint. The officer mentioned in the written complaint may or may not be made aware of the complaint depending upon its nature. Sometimes a supervisor merely addresses a conduct issue with an officer without indicating the matter was precipitated by an inmate complaint. The lieutenant further testified that the Ohio State Highway Patrol independently investigates crimes that occur within the correctional institution. The institution reports an assault to the highway patrol and

4

it conducts an investigation if the institution requests one and the highway patrol institutes any criminal actions.

(ECF No. 12-2, Exhibit 8); *State v. Lanier*, No. L-18-1119, 2019 WL 3764568, 2019-Ohio-3213 (6th Dist. Aug. 9, 2019).

## III. PROCEDURAL HISTORY

### A. <u>State Court Conviction</u>

On September 19, 2017, Mr. Lanier was indicted in the Lucas County Court of Common Pleas on one third-degree felony count of assault on a correctional officer in violation of R.C. §§ 2903.13(A), (C)(1), and (C)(3). (ECF No. 12-2, Exhibit 1). On October 10, 2017, Mr. Lanier pled not guilty to the charge. (ECF No. 12-2, Exhibit 2).

On May 9, 2018, the jury returned a guilty verdict. (ECF No. 12-2, Exhibit 3). On May 22, 2018, the trial court held a sentencing hearing and sentenced Mr. Lanier to a term of 30 months. (ECF No. 12-2, Exhibit 4). The trial court also ordered that Mr. Lanier would serve his sentence consecutively to his existing prison term. *Id*.

### B. <u>Direct Appeal</u>

On May 25, 2018, Mr. Lanier, through counsel, timely filed a notice of appeal to the Sixth Appellate District. (ECF No. 12-2, Exhibit 5). On September 12, 2018, Mr. Lanier filed his appellate brief, raising the following assignments of error:

1. The guilty verdict was against the manifest weight of the evidence.

2. The trial court erred, to appellant's prejudice, in refusing to permit impeachment of a testifying officer.

3. The trial court abused its discretion in ordering appellant to pay the costs of appointed counsel, confinement and supervision.

(ECF No. 12-2, Exhibit 6).

On August 9, 2019, the Sixth Appellate District affirmed Mr. Lanier's conviction.

(ECF No. 12-2, Exhibit 8). On October 24, 2019, Mr. Lanier, acting *pro se*, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 12-2, Exhibit 9). Mr. Lanier also filed a motion for leave to file a delayed appeal, which the Ohio Supreme Court granted on December 31, 2019. (ECF No. 12-2, Exhibits 10-11). On January 27, 2020, Mr. Lanier filed his memorandum in support of jurisdiction, in which he raised the following propositions of law:[1]

1. Appellant claims that his conviction for assault on a corrections was against the manifest of evidence. No tangible visual evidence was admitted, only claims from corrections that varied enough for error in facts.

2. Appellant argues that he should have been permitted to introduce Officers Eldridge disciplinary records to demonstrate his character for untruthfulness, Officer Eldridge was not truthful when he said he wasn't familiar with the disciplinary proceedings for corrections officers when he himself has been subject to that process.

3. The trial court imposed the cost of prosecution, supervision, confinement and appointed counsel. While the trial court is not required to conduct a formal hearing before imposing such cost, "the record must contain some evidence that the court considered the defendants ability to pay." *State v. Johnson*, 6th Dist. No. L-16-1165, 2017-Ohio-8206.

(ECF No. 12-2, Exhibit 12). On March 17, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 12-2, Exhibit 14).

**C.  Federal Habeas Action**

On July 29, 2021, Mr. Lanier, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Lanier's habeas petition raises four grounds for relief:

1. Petitioner's due process rights as guaranteed by the 14th Amendment to the United States Constitution were violated when the jury found him guilty where the evidence was against the weight of the evidence.

2. Petitioner's due process rights as guaranteed by the 14th Amendment to the United States Constitution were violated when the trial court refused to allow impeachment of Officer Eldridge's testimony.

---

[1] Mr. Lanier's propositions of law are reproduced verbatim.

3.  Petitioner's due process rights as guaranteed by the 14th Amendment to the United States Constitution were violated when the trial court ordered petitioner to pay the costs of appointed counsel for defense, confinement, and supervision.

4.  Petitioner's rights to a fair trial under the 6th Amendment and due process rights under the 14th Amendment to the United States Constitution were violated when the prosecution withheld evidence which demonstrated that Officer Eldridge's testimony was perjured.

*Id*. The Warden filed an answer/return of writ on March 31, 2022. (ECF No. 12). Mr. Lanier did not file a traverse, so on October 30, 2023, I entered an order establishing a final deadline of December 29, 2023, for Mr. Lanier to do so. (*See* ECF non-document entry dated October 30, 2023). I also informed Mr. Lanier that if he did not file a traverse by that date, I would proceed to consider his petition. *Id*. To date, Mr. Lanier has not filed a traverse.

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Lucas County Court of Common Pleas sentenced Mr. Lanier, and the Court takes judicial notice that Lucas County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Lanier's § 2254 petition.

### B. <u>Exhaustion and Procedural Default</u>

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas

corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

If a procedural default has occurred, the default can be excused and will not preclude

consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir.

1998).

### D.  **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act,

Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v.*

*Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority

to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.  ANALYSIS

### A.  Statute of Limitations

The Warden first argues that Mr. Lanier's habeas petition is barred in its entirety because Mr. Lanier failed to file it within the applicable statute of limitations. I agree that Mr. Lanier's petition is time-barred in its entirety.

AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus. See 28 U.S.C. § 2244(d)(1). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petitioner's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). The one-year limitations period begins to run from the latest of four dates:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Cases become final for purposes of § 2244(d)(1)(A) when the time to file an appeal has expired. *See Lawrence v. Florida*, 549 U.S. 327, 333 (2007). However, "[t]he one-year period of limitations is tolled during the time that a 'properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'" *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459 (6th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(2)).

Here, the Ohio Supreme Court declined to accept jurisdiction of Mr. Lanier's appeal on March 17, 2020. Following that denial, Mr. Lanier had 90 days to file a petition for a writ of certiorari to the U.S. Supreme Court. *See* Sup. Ct. R. 13. He did not do so, and his conviction became final on June 15, 2020. The AEDPA statute of limitations began running the next day, which means that Mr. Lanier had until June 16, 2021, to file his habeas petition. However, he did not file his habeas petition until July 29, 2021, when he provided his petition to prison officials for mailing. *See* ECF No. 1; *Anderson v. Brunsman*, 562 F. App'x 426, 428 n.1 (6th Cir. 2014) (holding that the date a prisoner presents his petition to prison officials is deemed to be the filing date under the mailbox rule) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)). Mr. Lanier's petition is therefore untimely.

In his petition, Mr. Lanier states that, with respect to his fourth ground for relief, he "only just recovered the documentation of Officer Eldridge's supervisors explaining they will discuss my allegations with him." (ECF No. 1, PageID # 10). That statement can be liberally construed as an assertion that his fourth ground for relief is timely under § 2244(d)(1)(D), which provides that the statute of limitations runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise

13

of due diligence." In determining the triggering date under § 2244(d)(1)(D), a court looks at "'when a duly diligent person in petitioner's circumstances would have discovered' the factual predicate for his claim." *Smith v. Meko*, 709 F. App'x 341, 344 (6th Cir. 2017) (quoting *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006)). "[T]he due-diligence standard in § 2244(d)(1)(D) 'does not require maximum feasible diligence, only 'due,' or reasonable diligence.'" *Rucker v. Genovese*, 834 F. App'x 126, 127 (6th Cir. 2020) (quoting *DiCenzi*, 452 F.3d at 470). The petitioner bears the burden of establishing that he has exercised due diligence. *See Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002).

Mr. Lanier has not met that burden here. He claims that he has newly discovered evidence establishing that the prosecution withheld evidence from him that could have been used to impeach Officer Eldridge. However, Mr. Lanier does not state what the alleged documentation consists of, when he allegedly discovered it, or why he could not have obtained it sooner had he exercised reasonable diligence. Moreover, while the Warden raised a statute of limitations argument in her return of writ, Mr. Lanier did not file a traverse and did not respond to the Warden's argument that § 2244(d)(1)(D) is inapplicable. As a result, Mr. Lanier has not met his burden of establishing that his fourth ground for relief is timely under § 2244(d)(1)(D).

Because AEDPA's one-year statute of limitations is not jurisdictional, a court may still entertain an untimely petition if the petitioner is entitled to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). If a petitioner seeks equitable tolling, he must show that: (1) he pursued his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citing *Holland*, 560 U.S. at 649); *Keeling*, 673 F.3d at 462.

In his petition, Mr. Lanier asserts that his petition is timely in light of "the 150 day deadline to file a writ of certiorari in combination with the one-year dead line," which, he asserts, made August 17, 2021 his deadline to file a habeas petition. (ECF No. 1, PageID # 13). Mr. Lanier is unfortunately mistaken about the deadline to file a petition for a writ of certiorari, which was 90 days after the Ohio Supreme Court declined to exercise jurisdiction over his appeal, not 150 days. Moreover, Mr. Lanier's misunderstanding of the applicable deadline does not provide a basis to equitably toll the statute of limitations. *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) ("Even if [petitioner] lacked actual knowledge of the relevant provisions of AEDPA, this court has repeatedly held that 'ignorance of the law alone is not sufficient to warrant equitable tolling.'") (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)); *Taylor v. Palmer*, 623 F. App'x 783, 789 (6th Cir. 2015) ("It is well-settled, however, that a mistaken belief in calculating the statute of limitations does not constitute an extraordinary circumstance sufficient to warrant equitable tolling.") (citing *Lawrence*, 549 U.S. at 336-37).

There is also an equitable exception to the one-year limitations period when a petitioner makes a "convincing showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). This exception is concerned with actual—as opposed to legal—innocence and must be based on reliable evidence not presented at trial. *See Schlup*, 513 U.S. at 324; *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The actual innocence exception "applies to a severely confined category: cases in which new evidence shows 'it is

15

more likely than not that no reasonable juror would have convicted [the petitioner].'"
*McQuiggin*, 569 U.S. at 395 (quoting *Schlup*, 513 U.S. at 329).

To the extent Mr. Lanier is seeking to rely on the actual innocence exception, I
conclude that he has not met his burden because he has not proffered new evidence that
satisfies the actual innocence standard. Even assuming Mr. Lanier is correct that he only
recently obtained evidence indicating that prison officials would discuss Mr. Lanier's
allegations with Officer Eldridge, he has not shown that it is more likely than not that no
reasonable juror would have convicted him in light of that evidence. Accordingly, I
recommend that the Court dismiss Mr. Lanier's claims as untimely. In an abundance of
caution, however, I will proceed to analyze the parties' remaining arguments as well.

### B. **Merits**

#### 1. *Ground One: Verdict Against the Manifest Weight of the Evidence*

In his first ground for relief, Mr. Lanier asserts that the jury's verdict was against the
manifest weight of the evidence. "[A] manifest-weight-of-the-evidence argument is a state
law argument." *Nash v. Eberlin*, 258 F. App'x 761, 764 n. 4 (6th Cir. 2007). Accordingly,
manifest weight of the evidence arguments are not cognizable on habeas review. *See Gibson
v. Miller*, No. 5:15cv119, 2016 WL 6277229, at *1 (N.D. Ohio Oct. 27, 2016) ("[C]ontentions
that a conviction is contrary to the manifest weight of the evidence also do not raise
cognizable claims."); *Cannon v. Bobby*, No. 1:21-CV-1846-JRA, 2024 WL 1054450, at *8
(N.D. Ohio Jan. 26, 2024), *report and recommendation adopted*, 2024 WL 1051630 (N.D.
Ohio Mar. 11, 2024) ("Claims regarding the manifest weight of the evidence arise under state
law and thus are not cognizable in federal habeas.").

Because manifest weight of the evidence claims are not cognizable, dismissal is
potentially appropriate on that basis alone. However, the Sixth Circuit has indicated that,

where a petitioner is proceeding *pro se*, a reviewing court should liberally construe such an argument as a sufficiency of the evidence argument, which *is* cognizable in a federal habeas proceeding. *See Nash*, 258 F. App'x at 764 n.4. Following *Nash*, "district courts have frequently construed *pro se* habeas petitions raising manifest weight of the evidence claims as asserting sufficiency of the evidence claims." *Thompson v. Harris*, No. 4:18cv2103, 2020 WL 5810020, at *9 (N.D. Ohio Sept. 30, 2020) (liberally construing manifest weight of the evidence claim as raising a challenge to the sufficiency of the evidence); *see also Miller v. Hill*, No. 1:22-cv-1758, 2023 WL 9100661, at *18 (N.D. Ohio Nov. 22, 2023) ("when a *pro se* petitioner raises a noncognizable manifest weight argument, the district court may construe that argument to raise a cognizable sufficiency-of-the-evidence challenge"); *Jackson v. Noble*, No. 3:18-cv-113, 2020 WL 8573892, at *5 (N.D. Ohio Sept. 15, 2020), *report and recommendation adopted*, 2024 WL 51196 (N.D. Ohio Jan. 4, 2024) (construing manifest weight of the evidence claim as sufficiency of the evidence claim). In an abundance of caution, I will therefore liberally construe Mr. Lanier's first ground for relief as raising a sufficiency of the evidence claim and will analyze that claim on the merits.

Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The reviewing court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Review of sufficiency of the evidence challenges involves "a double layer of deference[.]" *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). "First, [a court] must view the evidence in the light most favorable to the prosecution, and determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mathis v. Colson*, 528 F. App'x 470, 476 (6th Cir. 2013) (quoting *Jackson*, 443 U.S. at 319). "Second, 'even were [a court] to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [a court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.'" *Id.* (quoting *Brown,* 567 F.3d at 205). Under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Here, the Sixth Appellate District held as follows in rejecting Mr. Lanier's manifest weight of the evidence claim:

{¶ 20} On appeal, appellant argues that his conviction is contrary to the manifest weight of the evidence because: 1) the evidence shows Officer Eldridge "likely initiated the physical conflict by misusing force against appellant" based on the testimony of Officer Ford that the incident "didn't go as planned"; 2) there was inconsistent testimony regarding how Officer Eldridge became involved and what he did; 3) there was inconsistent testimony whether inmates could expect to have allowances for missed time; 4) appellant was not first given a ticket for his disobedience; 5) Eldridge denied knowing the institution's procedure for handling inmate complaints despite the fact that he had been disciplined for using force; 6) the video recording of the day room did not cover the incident and, therefore, infers Officer Eldridge inserted himself into the incident and provoked appellant in some manner.

{¶ 21} Upon a review of all of the evidence, we find appellant points only to conjecture, not "evidence," that a different incident occurred. There is no evidence from which a jury could reasonably infer that Officer Eldridge did something to cause appellant to strike Officer Ford. The evidence regarding appellant's complaint of missed time was not conflicting. Officer Ford explained that she did not give appellant a ticket because she did not foresee appellant would continue to resist. There was no

18

evidence that Officer Eldridge had ever been disciplined for the use of undue force or that he should have known the inmate complaint process. Finally, the lack of a complete surveillance footage does not give rise to an inference that Officer Eldridge instigated the incident.

{¶ 22} We find there was undisputed evidence that appellant knowingly swung and struck Officer Ford. There was no conflicting evidence regarding the material issues and even if there was any conflicting evidence, the jury must resolve the conflict. We cannot, as a reviewing court, substitute our judgment for the trier of fact who saw the witnesses testify and assessed their credibility. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. As stated above, our role on review is to determine if there is anything which indicates the jury lost its way in evaluating the evidence and drawing inferences from the direct evidence. We find that there was not. Therefore, we find that appellant's conviction was not contrary to the manifest weight of the evidence.

(ECF No. 12-2, Exhibit 8).

Applying the first layer of the "double layer of deference," *White*, 602 F.3d at 710, I conclude that a rational trier of fact could have found that the undisputed evidence showed that Mr. Lanier knowingly swung and struck a correctional officer given the testimony from various witnesses. A rational trier of fact also could have found that Mr. Lanier relied on conjecture, rather than concrete evidence, in asserting that Office Eldridge precipitated the incident and that the incident unfolded differently than witnesses testified. Accordingly, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Mr. Lanier guilty of assault beyond a reasonable doubt.

And even if I had concluded (which I do not) that a rational trier of fact could not have found Mr. Lanier guilty beyond a reasonable doubt, on habeas review I must still defer to the state appellate court's determination as long as it is not unreasonable. *White*, 602 F.3d at 710. Applying the second layer of the "double layer of deference," I do not find the state appellate court's determination unreasonable for the reasons set forth above. Accordingly, I alternatively recommend that the Court deny Mr. Lanier's first ground for relief on the merits.

### 2. *Ground Two: Exclusion of Impeachment Evidence*

In his second ground for relief, Mr. Lanier argues that his due process rights were violated because the trial court improperly excluded evidence that would have impeached Officer Eldridge's testimony. The Warden responds that Mr. Lanier procedurally defaulted on this claim by failing to raise it as a federal constitutional claim during the state court review process. I agree. I also conclude that, even if Mr. Lanier had not procedurally defaulted on this claim, it fails on the merits.

### a. *Procedural Default*

"[F]ederal courts ordinarily may not 'consider a claim in a *habeas* petition that was not "fairly presented" to the state courts' absent cause and prejudice to excuse the procedural default." *Nian v. Warden, N. Cent. Corr. Inst*., 994 F.3d 746, 751 (6th Cir. 2021) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). "[I]t does not suffice to only present the claim to a state trial court; rather, the petitioner must raise the claim in state court and 'pursue [it] through the state's ordinary appellate review procedures." *Id*. at 751-52 (quoting *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009)).

The Warden concedes that Mr. Lanier raised a claim in the Ohio appellate courts that the trial court improperly prevented him from impeaching Officer Eldridge. The Warden argues, however, that Mr. Lanier has nonetheless procedurally defaulted on the claim because he did not fairly present it as a federal constitutional claim, and instead argued only that the trial court's ruling violated Ohio state law.

"To determine whether a petitioner has fairly presented a claim in state court, [a court] ask[s] whether the petitioner: (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific

constitutional right; or (4) alleged facts well within the mainstream of constitutional law." *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017). "While a petitioner need not cite 'chapter and verse' of constitutional law, 'general allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (quoting *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)).

I agree that Mr. Lanier did not fairly present his impeachment claim as a federal due process claim on direct appeal. As the Warden correctly notes, Mr. Lanier argued to the Sixth Appellate District that the trial court's ruling violated Ohio Rules of Evidence governing when the credibility of a witness may be attacked and when a witness may be impeached. (ECF No. 12-2, Exhibit 6). Mr. Lanier did not cite to the Sixth or Fourteenth Amendments, did not reference his right to due process, did not cite to any federal cases or state cases employing a federal constitutional analysis, and did not allege facts within the mainstream of federal constitutional law. Accordingly, Mr. Lanier did not fairly present his claim to the Ohio courts, And, because his time to do so has long since expired, he has procedurally defaulted on the claim. *See Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review").

Mr. Lanier's procedural default can nonetheless be excused if he can demonstrate either (1) cause and prejudice; or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Mr. Lanier has not met that standard here. He does not argue in his petition that he has shown cause and prejudice, and he did not file a traverse responding to the Warden's procedural default argument. And, as

noted above, Mr. Lanier has not shown that failure to consider his claim would result in a fundamental miscarriage of justice because he has not submitted new evidence showing that he is actually innocent of the charged offense. Accordingly, I alternatively recommend that the Court dismiss Mr. Lanier's second ground for relief as procedurally defaulted. However, in the interest of completeness, I will also analyze Mr. Lanier's claim on the merits.

### b. Merits

"It is well-established that alleged trial court errors in the application of state procedures or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable grounds for federal habeas relief." *Brady v. Collins*, No. 1:09-cv-0009, 2009 WL 6407543, at *12 (N.D. Ohio Sept. 15, 2009), *report and recommendation adopted*, 2010 WL 1741113 (N.D. Ohio Apr. 29, 2010). However, habeas relief may lie where a state court evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," meaning that it 'offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)).

In *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Supreme Court held that "the rights to confront and cross-examine witnesses . . . . have long been recognized as essential to due process" and are "among the minimum essentials of a fair trial." *Id*. at 294. The Supreme Court also held that "[t]he right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process." *Id*. at 295 (quoting *Dutton v. Evans*, 400 U.S. 74, 89 (1968)).

However, the Court also cautioned that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in

the criminal trial process." *Id*. Thus, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Notably, "[f]ederal courts may not . . . perform *de novo* review of the evidentiary rulings made by state courts that form that basis for a habeas corpus petitioner's claim." *Scott v. Warden, Mansfield Corr. Inst*., No. 3:12-cv-146, 2014 WL 5384284, at *5 (S.D. Ohio Oct. 21, 2014). Rather, AEDPA deference applies so long as the state courts adjudicated the claim. *Id*. In rejecting Mr. Lanier's argument that the trial court improperly denied him an opportunity to impeach Officer Eldridge, the Sixth Appellate District held as follows:

{¶ 24} In his second assignment of error, appellant argues the trial court erred by refusing to allow appellant to impeach Officer Eldridge. Prior to trial, the trial court preliminarily granted appellee's motion in limine to exclude Officer Eldridge's disciplinary records from evidence. Appellant raised the issue again during cross-examination and sought to impeach the officer with extrinsic evidence from the officer's disciplinary record.

{¶ 25} The trial court found the probative value of any possible relevant evidence that could have been elicited was outweighed by the prejudicial effect of addressing a collateral issue to whether appellant had assaulted Officer Ford. However, the trial court allowed appellant to question Officer Eldridge further about the process of investigating inmate complaints and internal investigations to clarify his testimony.

{¶ 26} Appellant first argues that the trial court erred as a matter of law by prohibiting appellant from questioning Officer Eldridge about his prior disciplinary hearing and reprimand to impeach Officer Eldridge's entire testimony as permitted by Evid.R. 607. Appellant asserts he had a reasonable basis for his inquiry about whether Officer Eldridge had been previously disciplined for use of force.

{¶ 27} Evid.R. 611(B) permits cross-examination on all relevant matters and matters affecting credibility. The language of the rule implies that questions relating to credibility are presumed to be inherently relevant, *Chambers v. Lee*, 9th Dist. Summit No. 27239, 2014-Ohio-4651, ¶ 7, and cannot be excluded as a collateral matter. *State v. Newland*, 2d Dist. Clark No. 1355, 1981 WL 5085, *2 (Feb. 18, 1981), citing *Harper v. State*, 106 Ohio St. 481, 485, 140 N.E. 364 (1922). However, the right of a

party to cross-examine a witness regarding credibility is limited by the requirement that the party have a reasonable basis for believing there is an impeaching fact. Evid.R. 607(B). The purpose of the limitation is to prohibit undue influence of the jury through innuendo when questioning a witness about matters without a good-faith belief there is factual predicate to support the questioning. *State v. Gillard*, 40 Ohio St.3d 226, 230, 533 N.E.2d 272 (1988), abrogated on other grounds by *State v. McGuire*, 80 Ohio St.3d 390, 402, 686 N.E.2d 1112 (1997). Furthermore, the trial court has the discretion to impose reasonable limits on "cross-examination based on a variety of concerns, such as harassment, prejudice, confusion of the issues, the witness's safety, repetitive testimony, or marginally relevant interrogation." *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001), citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

{¶ 28} We find the trial court did not unfairly limit cross-examination in this case because no good-faith basis for impeachment existed to support further questioning of the witness. Appellant did not proffer any extrinsic evidence which demonstrated Officer Eldridge's initial testimony was clearly untruthful. The disciplinary records did not indicate that either investigation was initiated by an inmate complaint or that Officer Eldridge should have known the inmate complaint process. Furthermore, the records show the officer was not disciplined regarding an unjust use of force investigation.

{¶ 29} Secondly, appellant asserts the trial court erred as a matter of law by refusing to allow appellant to impeach the officer's testimony with extrinsic evidence (his disciplinary records) by showing the officer had a motivation to be untruthful. Evid.R. 608(B) and 616(A) and (C). Appellant also asserts that he should have been able to use this specific instance of the officer's conduct to attack his character of truthfulness without consideration of whether the extrinsic evidence would have an unfair prejudicial effect.

{¶ 30} While Evid.R. 607 permits a party to cross-examine a witness for impeachment purposes, a party may not use extrinsic evidence of specific instances of conduct to attack the credibility of a witness. Evid.R. 608(B). However, a party may impeach a witness through cross-examination or by the introduction of extrinsic evidence if such evidence would establish the witness had a: "[b]ias, prejudice, interest, or any motive to misrepresent." Evid.R. 608(B); Evid.R. 616(A) and (C).

{¶ 31} A trial court exercises its discretion to determine whether to allow cross-examination or the admission of extrinsic evidence relating to specific contradictions to a witness's testimony. Evid.R. 608(B); *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 100. The trial court must consider whether the evidence is clearly probative of the witness's character for truthfulness or untruthfulness. Evid.R. 608(B); *Drummond*.

{¶ 32} Appellant asserts the officer's disciplinary records evidence his misuse of force, which is relevant to impeach his testimony that he did not know the disciplinary process resulting from an inmate complaint. He asserts that the officer had a motive

24

to misrepresent his knowledge of the process because it would: 1) reveal the current charges were filed two months after appellant filed two complaints against the officer (although there is no evidence in the record that appellant filed any complaints); and 2) reveal the officer had been previously been disciplined as a result of an inmate complaint.

{¶ 33} We find appellant's arguments of relevancy not well-taken. First, the records do not support a finding the officer was disciplined for an unjust use of force. Second, the records do not support a finding the officer was untruthful about his knowledge of the disciplinary procedure for inmate complaints as there was no evidence the issues in his disciplinary record arose out of inmate complaints or that he should have known the process. Third, impeachment of Officer Eldridge's testimony regarding an alleged prior discipline for the use of unjust force was a collateral matter and would not have altered the outcome in this case. Officer Ford testified she was struck by appellant when he resisted complying with her order to lock down. The camera footage supports her testimony in part. Even if Officer Eldridge was untruthful about his knowledge of the inmate complaint process or his alleged prior discipline, we cannot reasonably infer from those facts that he instigated this incident which resulted in appellant striking Officer Ford. Fourth, Lieutenant Weirich testified the Ohio State Highway Patrol is responsible for investigating crimes which occur in the institution and instituting any criminal actions. Therefore, there was no evidentiary support for appellant's retribution argument. We conclude that admission of Officer Eldridge's disciplinary record or further questioning regarding this collateral matter would not have elicited any relevant evidence.

{¶ 34} While appellant contends that he was entitled to use the disciplinary records for impeachment under Evid.R. 616 without consideration of whether the evidence was unfairly prejudicial, he cites no case law in support of his argument. App.R. 16(A)(7) requires that arguments be supported by citations to authorities on which the appellant relies.

{¶ 35} The purpose of Evid.R. 616 is to allow a party the opportunity to impeach a witness with a collateral matter, bias, through cross-examination or through extrinsic evidence. Giannelli, 1 Baldwin's Ohio Prac.Evid., Art. VI, Rule 616 Methods of impeachment, Author Comment, 616.5 Bias: Extrinsic Evidence (3d Ed.).

{¶ 36} The trial court exercises discretion in ruling on the admission of evidence and the appellate court reviews those decision under an abuse of discretion standard of review. *France v. Krebs*, 9th Dist. Lorain No. 14CA010585, 2015-Ohio-3723, ¶ 12. Admissible evidence must be relevant, Evid.R. 401, and even relevant evidence can be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). *See also Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 171-172, 743 N.E.2d 890 (2001); *State v. Scurlock*, 6th Dist. Lucas No. L-15-1200, 2017-Ohio-1219, ¶ 29; *House v. Swann*, 6th Dist. Lucas No. L-09-1232, 2010-Ohio-4704, ¶ 16.

{¶ 37} In the case before us, we find the trial court did not abuse its discretion by excluding the use of the extrinsic evidence to show the officer was biased. First, appellant failed to show the evidence was relevant because it does not establish the officer was disciplined for the use of excessive force. Furthermore, the issue is whether appellant assaulted Officer Ford, not the reason for appellant attempting to strike Officer Eldridge or how the incident arose. Second, any possible probative value is outweighed by the danger of unfair prejudice because appellant's attempt to imply that Officer Eldridge instigated the incident misleads the jury from evaluating the evidence actually admitted.

(ECF No. 12-2, Exhibit 8).

Applying AEDPA deference, the Sixth Appellate District's holding that the purported impeachment testimony was of marginal relevance and that any probative value was outweighed by the danger of unfair prejudice is not contrary to or a misapplication of controlling law. Rather, the Sixth Appellate District correctly noted that a trial court may place reasonable limitations on cross-examination and thoroughly discussed why the limitations the trial court imposed were appropriate under the circumstances. I therefore alternatively recommend that the Court deny Mr. Lanier's second ground for relief on the merits.

### 3. Ground Three: Imposition of Court Costs

In his third ground for relief, Mr. Lanier asserts that the trial court violated his due process rights by ordering him to pay the costs for his confinement, supervision, and appointed defense. The Warden responds that this ground for relief is not cognizable in a federal habeas proceeding. I agree with the Warden.

Despite casting his claim as a federal constitutional issue by referencing the Fourteenth Amendment, Mr. Lanier's challenge to the imposition of court costs is based solely on state law, and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Further, Mr. Lanier's claim is not cognizable because under 28 U.S.C. § 2254(a), he is only entitled to the writ of habeas corpus if he is "in

custody of the violation of the Constitution or laws or treaties of the United States." And generally, "fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the 'in custody' requirement of a cognizable habeas claim." *Washington v. McQuiggin*, 529 F. App'x 766, 773 (6th Cir. 2013); *see also Warsaw v. Palmer*, No. 16-2554, 2017 WL 5201934, at *1 (6th Cir. Apr. 19, 2017) (denying a certificate of appealability on the petitioner's ground for relief challenging the court costs, reasoning that the "ground for relief is not cognizable because it does not challenge the fact or duration of his confinement"); *Lute v. Warden, Chillicothe Corr. Inst.*, No. 1:19-cv-694, 2020 WL 5749944, at *3 (S.D. Ohio Sept. 25, 2020), *report and recommendation adopted*, 2020 WL 6161212 (S.D. Ohio Oct. 21, 2020) (holding that ground for relief challenging imposition of court costs "does not state a cognizable claim for federal habeas relief"). I therefore recommend that the Court dismiss Mr. Lanier's third ground for relief because it is not cognizable.

### 4.  *Ground Four: Brady Claim*

In his fourth and final ground for relief, Mr. Lanier argues that his rights under the Sixth and Fourteenth Amendments were violated because the prosecution withheld evidence demonstrating that Officer Eldridge committed perjury. The Warden argues that Mr. Lanier procedurally defaulted on this claim because he did not raise it before the Ohio courts.

As noted above, a petitioner procedurally defaults on a claim if the petitioner fails to raise it during the state review process while state procedures are still available. *Alley*, 307 F.3d at 385. Here, Mr. Lanier did not raise any claim on direct appeal that the prosecution withheld evidence. Nor has Mr. Lanier filed any post-conviction state habeas proceeding or other collateral proceeding raising such a claim.

The Warden argues that the time for Mr. Lanier to raise his claim in state court has

expired and that he has therefore procedurally defaulted on the claim. As the Warden correctly notes, R.C. § 2953.21(A)(2) provides that a petitioner must file a post-conviction petition within 365 days after the date on which a transcript was filed in the court of appeals. Mr. Lanier did not do so, and the Warden argues that Mr. Lanier has procedurally defaulted because any such petition would now be untimely.

The fact that Mr. Lanier did not file a post-conviction petition within one year does not necessarily resolve the question of whether Mr. Lanier has procedurally defaulted, because R.C. § 2953.23(A)(1) provides that a petitioner may file a delayed petition for post-conviction relief if the petitioner: (1) was "unavoidably prevented from discovery of the facts upon which he must rely to present the claims for relief"; and (2) shows "by clear and convincing evidence that, but for the constitutional error at trial, no reasonable factfinder would have found him guilty of the offense of which he was convicted."

Mr. Lanier did not argue in his habeas petition that state court avenues still exist for him to exhaust his fourth ground for relief under R.C. § 2953.23(A)(1). Mr. Lanier also did not file a traverse. As a result, he has not responded to the Warden's exhaustion argument and has not shown that there is any possibility he could satisfy either prong of R.C. § 2953.23(A)(1). Courts in this circuit have held that, where a petitioner does not demonstrate that there is any possibility he could satisfy R.C. § 2953.23(A)(1)'s requirements, the petitioner has procedurally defaulted on the claim . *See Buckley v. Ohio¸* No. 5:19-cv-424, 2020 WL 5603768, at *8 (N.D. Ohio Aug. 18, 2020), *report and recommendation adopted*, 2020 WL 5593099 (N.D. Ohio Sept. 18, 2020) (holding that it would be futile for petitioner to return to state court to attempt to exhaust claim under R.C. § 2953.23(A)(1) where there was "no indication" that petitioner was unavoidably prevented from discovering facts upon

which claims were based); *Kelly v. Richard*, No. 2:18-cv-19, 2018 WL 5777307, at *2, 5 (S.D. Ohio Nov. 2, 2018), *report and recommendation adopted*, 2020 WL 419438 (S.D. Ohio Jan. 27, 2020) (determining that petitioner "plainly" could not satisfy the requirements of R.C. § 2953.23(A)(1) and stating that "there is no ironclad rule in habeas corpus that any state law question which could theoretically be decided by a state court must be sent back to that court to test the theory"). I recommend that the Court reach the same result here and hold that Mr. Lanier has procedurally defaulted on his fourth ground for relief because he failed to present the claim to the Ohio courts while avenues to do so remained available to him.

I acknowledge that there is some authority that would support a contrary result. In *Godbolt v. Russell*, 82 F. App'x 447 (6th Cir. 2003) the Sixth Circuit stated that "[n]o matter how unlikely it seems that [petitioner's] petition will fall within the narrow exception contained in [R.C. § 2953.23(A)(1)], it is for the state courts to interpret and enforce their laws on such issues." *Id.* at 450. Following *Godbolt*, several courts in the Southern District of Ohio have held that it is not a federal court's role to determine that a petitioner cannot file a delayed petition as a matter of law. *See Harris v. Warden, Madison Corr. Inst.*, No. 1:11-cv-414, 2012 WL 1552757, at *5 (S.D. Ohio Apr. 30, 2012), *report and recommendation adopted*, 2012 WL 1902435 (S.D. Ohio May 24, 2012) (determining "out of an abundance of caution" that delayed petition under R.C. § 2953.21(A)(1)(a) was "arguably available" and that habeas petition should be dismissed without prejudice or stayed); *Ivey v. Warden, Hocking Corr. Facility*, No. 1:13-cv-914, 2015 WL 457401, at *8 (S.D. Ohio Feb. 3, 2015) (holding that, although it was "highly likely that petitioner will not be able to satisfy" the requirements of R.C. § 2853.23(A)(1), state court should have the opportunity to answer that question).

If the Court determines that state court avenues are still theoretically available to Mr. Lanier, he has not exhausted his *Brady* claim, and his petition is a "mixed petition" containing both exhausted and unexhausted claims. *Lundy*, 455 U.S. at 510. In *Lundy*, the Supreme Court held that comity interests require that state courts have the first opportunity to have the unexhausted claims. *Id*. at 518-19. In *Rhines v. Weber*, 544 U.S. 269 (2005), however, the Supreme Court held that a district court is not required to dismiss a mixed petition in all circumstances. Rather, a district court may: (1) deny an unexhausted claim that is "plainly meritless"; or (2) stay the action for good cause and permit the petitioner to present the unexhausted claim in state court. *Id*. at 277; *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Even assuming that an avenue still exists for Mr. Lanier to present his fourth ground for relief to the Ohio courts under R.C. § 2953.23(A)(1) such that his claim is not exhausted, I conclude that his claim is "plainly meritless" and recommend that the Court alternatively deny it on the merits because the prosecution's alleged withholding of impeachment evidence did not violate Mr. Lanier's constitutional rights.

"Under *Brady v. Maryland*, the government has a constitutional obligation to furnish a criminal defendant with any exculpatory evidence related to the defendant's guilt or possible punishment." *Robinson v. Mills*, 592 F.3d 730, 735 (6th Cir.2010) (citing *Brady*, 373 U.S. 83, 87 (1963)). "[S]uppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. To comply with *Brady,* "the individual prosecutor has a duty to learn of any favorable evidence known to the others

acting on the government's behalf in this case, including the police." *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)) (internal quotation marks omitted). A prosecutor's duty under *Brady* encompasses impeachment evidence as well as exculpatory evidence. *Id*. at 280 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). That is because "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

"A successful Brady claim requires a three-part showing: (1) that the evidence in question be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's actions resulted in prejudice." *Bell v. Bell*, 512 F.3d 223, 231 (6th Cir. 2008) (citing *Strickler*, 527 U.S. at 281-82). Notably, the evidence at issue must be "material," meaning that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. Thus, "favorable evidence is subject to constitutionally mandated disclosure when it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Cone v. Bell*, 556 U.S. 449, 470 (2009) (quoting *Kyles*, 514 U.S. at 435).

While Mr. Lanier asserts that the prosecution improperly withheld evidence, he is

vague regarding exactly what evidence the prosecution supposedly withheld. In his petition he states only that "Officer Eldridge testified that he did not have any contact with Petitioner after 4/11/17" but that "evidence exists showing that Officer Eldridge was harassing Petitioner after that date." (ECF No. 1, PageID # 10). However, Mr. Lanier does not explain what that evidence is or how the prosecution failed to turn it over in accordance with its *Brady* obligations. Nor has Mr. Lanier explained how any such evidence, if disclosed, could reasonably be taken to put the whole case in a different light so as to undermine confidence in the verdict. Accordingly, I alternatively recommend that the Court deny Mr. Lanier's fourth ground for relief as plainly meritless in the event that the Court does not dismiss it as procedurally defaulted.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].")."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B.  Analysis**

Mr. Lanier has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

**VII. RECOMMENDATION**

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Lanier's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated:  April 10, 2024

*/s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same

argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).